EDITH ANDERSEN, Appellant-Respondent, *v.* STATE OF NEW YORK, Respondent-Appellant. (Claim No. 30538.) ANDREW W. ANDERSEN, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 30539.)

Third Department, May 13, 1953.

Warner M. Bouck for appellant-respondent and appellant.

Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown and John R. Davison of counsel), for respondent-appellant and respondent.

Per Curiam. The State built a new road parallel to an old one. To afford access from the old to the new road the State built a short connecting link where the roads came close together. The State retained control over the connecting link and over the area in the old road where the link was joined, but it did not keep control of the rest of the old road.

Claimants are husband and wife. Both were injured when a car driven by the husband in the old road and attempting to make the turn into the connecting link to the new road, ran into a barricade on the old road beyond the turn. The wife has had judgment in the Court of Claims for $15,000 and appeals

on the ground it is inadequate. In the husband's case there was a judgment dismissing the claim and there are separate appeals by the husband and by the State.

The connecting link was almost, though not quite, at a right angle to the old road. The turn into the connecting link was rounded somewhat so that a vehicle would make something longer than a right angle turn, but it was very sharp. About eighty feet beyond the point where on the edge of the old road the curve of the link began the State had erected a barricade across the old road to close it off beyond that point. The paved portion of the old road, however, continued in a straight line for some distance beyond the barricade.

The barricade, as the Court of Claims found it to have been and as it appears in the photographs before us, consisted of three railroad rails set upright in the ground and connected with steel cables which stretched across the pavement. As we examine the exhibits, one of the rails is directly in the center of the old road and the other two are at each edge; there are four strands of cable.

Erected at the top of the center post is a sign forty by twenty inches in dimension, containing a black arrow on a yellow background pointing in the direction of the turn. The arrow occupies almost the entire width of the sign. The sign is before us; it is of a standard type of reflectorized material which clearly reflects light and we regard as entirely credible the testimony that it " was visible " in the beam of headlights for 500 feet or more.

Yet the barricade and the arrow in the middle of the road were placed well beyond the point where the sharp curve of the connecting link road began to leave the old highway pavement; the posts and strands of cable across the road were so designed as to leave the physical continuance of the old road plainly visible beyond them.

Until one was very close to, and perhaps beyond, the point where the turn should be made the nature of the barrier across a road which seemed to continue for use might not be fully apparent, even to a careful driver. The reflectorized arrow sign would have been apparent much earlier and its implications of the need for a turn in the vicinity brought home much more clearly to a careful driver, but even the arrow sign was eighty feet beyond the point where the turn ought to have been started. No warning of any kind was given in advance of the turn, although the State retained control of the immediate approach to the intersection.

The court was justified, we think, in finding the State negligent in maintaining this intersection. The physical conditions there could be found confusing; the previous warning inadequate. We need go no further in the case than to hold, as we do, that there is a sufficient basis in the record to determine that the State's negligence contributed to the accident.

The court found also that the driver claimant was negligent and hence that he was not entitled to recover even though his wife as a passenger could recover. The claimant driver testified not merely that he did not see the sign and the barricade until too late to avoid colliding; he said that he did not see either at any time. This admission of failure to see at least the reflectorized sign which was plainly there for any driver using minimal care to observe was negligence, or so the court could readily have found on this record.

We turn to the wife's appeal based on inadequacy. Her jawbone was fractured in four places; two of the fractures were compound. The swelling at the floor of the mouth as a result of these fractures was so great that it was difficult to keep the airway open and extremely difficult to feed her. The treatment for the fractures was undertaken by a dental surgeon in two separate operations and the fragments were held in position by the aid of wire and other devices.

Six weeks after the accident, however, X-ray examination showed " good alignment of all fractures " and while there is some permanent residual difficulty in fully opening her mouth so that food must, in her words, be cut up " very small " and there is some sideward motion of the jaw, the surgical result seems good. She had full dentures before the accident. The general words of the dental surgeon that there is a residual " limited opening of the jaw " are not accompanied by measurement or precision.

There were a number of lacerations on the face some of which left scars which are illustrated to us in the photographs. They were treated surgically immediately after the accident. There is a scar one inch long at the base of the nose; there are two scars on the left cheek, one two inches long, another two and one-half inches long; a scar on the point of the chin one and one-half inches long; one on the left side of the chin one inch long and one underneath the chin, transverse, about one and a half inches long. The scar over the base of the nose extends some two inches more over across the right eyebrow. These are the principal scars; there are some lesser ones.

The scars are described as " permanent " but we are not advised either if they can be corrected or will improve spontaneously or the extent to which they will, if at all, remain cosmetic defects. The total cost of all medical and dental services was $430 and her hospital bill, $646. New dentures will cost $250 more. These bills are, of course, the husband's responsibility, but we regard their total extent of some help in gauging the gravity of the wife's physical injuries.

Evaluation of this kind of an injury is a responsibility especially committed to the court that tries the case. That a jury might, perhaps, have awarded a higher amount which no court would disturb; that some other judge might evaluate the injuries as being worth more than $15,000, do not permit us to interfere on appeal with an evaluation plainly within the right of the Court of Claims. A good ground for revision of the amount found has not been demonstrated by appellant.

The judgments appealed from should be affirmed, but without costs.

FOSTER, P. J., BERGAN, COON, HALPERN and IMRIE, JJ., concur.

Judgments affirmed, without costs.